<u>FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
RICCARDO McKNIGHT,                                    :
                                                      :        Civil Action No. 13-3747  (WHW)
                          Petitioner,                 :
                                                      :
                  v.                                  :
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :                **<u>OPINION</u>**
                          Respondent.                 :
_____:

**Walls**, Senior District Judge:

This case, commenced as a § 2255 action, has been peppered by Petitioner's filings

that evinced his, and has caused Respondent's, confusion.  Petitioner's § 2255 claims will

be denied, and no certificate of appealability will issue.  But, as explained later, there are

also three other lines of habeas claims litigated here.  No habeas petitioner can challenge

different determinations in a single action.  "Habeas Rules do not envision . . . a lump-sum

challenge to the circumstances which a litigant might find [himself] in.  Rather, [under]

Habeas Rule 2(e), [P]etitioner is obligated to submit a separate habeas application

challenging each particular determination . . . .  [P]etitioner shall select, for the purposes of

each . . . habeas action, [a] particular [administrative or judicial] determination . . . he

wishes to challenge, and then file an individual petition with regard to each specific

challenge."  <u>Alou v. Holder</u>, No. 10-3728, 2010 U.S. Dist. LEXIS 113717, at *2-3 (D.N.J.

Oct. 22, 2010) (citing 28 U.S.C. § 2254 Rule 2(e), applicable to §§ 2241 and 2255 petitions

through Habeas Rule 1(b)) (capitalization removed); <u>see also</u> <u>Muniz v. Zickefoose</u>, No. 10-

2444, 2011 U.S. Dist. LEXIS 115766, at *13 (D.N.J. Sept. 30, 2011) (noting the same as

"axiomatic"), aff'd, 460 F. App'x 165 (3d Cir. 2012).  When a litigant raises different habeas challenges in a single action, the court either dismisses his claims for failure to comply with Habeas Rule 2(e) or severs each line of challenges into its own habeas case. See, e.g., Johnson v. Zickefoose, No. 12-2544, 2014 U.S. Dist. LEXIS 2091 (D.N.J. Jan. 8, 2014) (creating four separate habeas actions for each line of claims); Watts v. United States, No. 11-0912, 2011 U.S. Dist. LEXIS 59082 (D.N.J. May 31, 2011) (creating two separate habeas actions for each line of claims); accord Frank v. Shartle, No. 13-5285, 2013 U.S. Dist. LEXIS 146605 (D.N.J. Oct. 10, 2013) (dismissing an improperly raised claim without prejudice to raising it in a new case); Izac v. Norwood, No. 10-5865, 2010 U.S. Dist. LEXIS 129520 (D.N.J. Dec. 7, 2010) (dismissing an improperly raised claim under the Rule and on alternative grounds).

Here Petitioner styled all his claims as § 2255 allegations.  It was a mistake.

Section 2254 supplies federal jurisdiction over habeas petitions filed by the inmates challenging their state convictions or sentences, or the execution of those state sentences, including the issues of parole, term calculation, etc.  See 28 U.S.C. § 2254.  In contrast, 28 U.S.C. §§ 2241 and 2255 confer jurisdiction over the petitions filed by federal inmates. Since "[t]he exact interplay between § 2241 and § 2255 is complicated, [and] an explication of that relationship is unnecessary for resolution of this [case]," Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citing In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997)), it is enough to state that "[m]otions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002).  As example, claims attacking plea agreements are raised in § 2255 motions.  See,

e.g., Hodge v. United States, 554 F.3d 372, 374 (3d Cir. 2009); United States v. Williams, 158 F.3d 736, 737-40 (3d Cir. 1998).  On the other hand, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," for instance, by raising claims attacking the Bureau of Prisons ("BOP") calculation of his prison term or designation of his place of confinement if it yields a "quantum of change" in the level of his custody.  Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001)); compare Ganim v. Fed. Bureau of Prisons, 235 F. App'x 882 (3d Cir. 2007) (a change in the geographical locale of imprisonment cannot yield the requisite quantum of change).

On April 21, 2008, the Government charged Petitioner with "knowingly and willfully devis[ing] a scheme . . . to defraud and to obtain money and property by . . . false pretenses."  United States v. McKnight, Crim. Action No. 08-mj-4039, ECF No. 1 (CCC) (D.N.J.).  On April 29, 2008, he was arrested and, on May 5, 2008, released on bail.  See id., ECF Nos. 3 and 7.  A year later, he pled guilty to that charge.  See United States v. McKnight ("McKnight"), Crim. Action No. 09-0242, ECF Nos. 14, 16 and 17 (WHW) (D.N.J.).  His plea included a broadly-termed waiver stating, "[Petitioner] voluntarily waive[s] the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to . . . a motion under 18 U.S.C. § 2255, which challenges the *sentence* imposed by the sentencing court. . . ."  This Action, ECF No. 8, Ex. 7 (emphasis supplied).

This Court held Petitioner's plea and sentencing hearings.  See McKnight, Crim. Action No. 09-0242, ECF Nos. 24 and 29.  Since, by that time, Petitioner was already

confined at the Warren County Jail after being arrested on one of his many New Jersey charges, this Court issued a writ of habeas corpus ad prosequendum.  See id., ECF No. 20. Petitioner's hearings before this Court did not involve any issue connected to his state charges, past or pending.  Rather, his plea colloquy before this Court was:

| | |
|---|---|
| The Court: | You are here to plead guilty to a charge of wire fraud in violation of federal law.  Do you understand that? |
| Petitioner: | Yes, I do. |
| The Court: | You should understand that you are under no obligation to plead guilty to the charge. . . . Do you follow me so far? |
| Petitioner: | Yes, I do. |
| The Court: | Let me back up for a moment . . . and get some personal history about you. . . . [W]hat type of work have you done . . . [s]ince you left two years of college? |
| Petitioner: | . . . I worked down on Wall Street for six years. |
| The Court: | What did you do? |
| Petitioner: | Stocks and bonds. . . . [I was a] transfer agent. |
| . . . | |
| The Court: | Now, getting back to what I said . . . . [D]o you realize that if you plead guilty to this charge, you expose and subject yourself to being sent to jail by me for [up to] 20 years . . . . Do you understand that? |
| Petitioner: | Yes. |
| . . . | |
| The Court: | Knowing that, you still wish to plead guilty to the charge? |
| Petitioner: | Yes. |
| The Court: | . . . [Y]our attorneys, on your behalf and with your knowledge, have worked out [this] plea deal . . . . Is that correct? |
| Petitioner: | Yes. |
| . . . | |
| The Court: | [T]he sentence that will be imposed upon you . . . will be the result of my exercise of discretion.  I will be the only one who decides what you should get by way of sentence. . . . I will be glad to listen to what you may have to say . . . . Do you understand that? |
| Petitioner: | Yes. |
| . . . | |
| The Court: | Has anyone made any promises to you . . . to get you to plead guilty . . . that you and I have not talked about today? |
| Petitioner: | No. |
| The Court: | Have you and I now discussed the plea bargain? |
| Petitioner: | . . . Yes. |

| | |
|---|---|
| The Court: | Did I leave anything out? |
| Petitioner: | No. |
| The Court: | You're sure? |
| Petitioner: | Yes. |
| . . . | |
| The Court: | Did you sign the application to enter a plea? |
| Petitioner: | Yes. |
| . . . | |
| The Court: | Before you signed those papers, did you read them? |
| Petitioner: | Yes. |
| The Court: | Did you review them with your attorney? |
| Petitioner: | Yes. |
| The Court: | Have you been satisfied with your attorney so far? |
| Petitioner: | Yes. |
| The Court: | Are there any questions you want to ask him about the papers or [about] anything [else at all]? |
| Petitioner: | No, Your Honor. |
| The Court: | Anything you want to ask me about? |
| Petitioner: | No, Your Honor. |
| The Court: | You're sure? |
| Petitioner: | Yes. |

This Action, ECF No. 8, Ex. 2.

On April 14, 2010, this Court sentenced Petitioner to sixty months of federal imprisonment. See McKnight, Crim. Action No. 09-0242, ECF No. 25, at 2. With that, Petitioner's writ of habeas corpus ad prosequendum expired, and he was returned to the State of New Jersey, the sovereign that held primary jurisdiction over him as a result of his Warren County arrest. As of now, Petitioner is still in the state's jurisdiction serving his New Jersey terms. See http://www.bop.gov/Locate ("Riccardo McKnight, Register Number: 29283-050" is "not in BOP custody"); https://www6.state.nj.us/DOC_Inmate/ results (New Jersey Department of Corrections ("NJDOC") online record showing that "Ricky McKnight, SBI No. 667018B," has been in New Jersey post-conviction custody since April 8, 2011, and is expected to become parole eligible on June 24, 2014, while his maximum release date from state custody is September 12, 2014).

In fact, Petitioner had three clusters of New Jersey convictions, each of many offenses. The first one was rendered April 8, 2011, by the Superior Court of New Jersey, Somerset County ("Somerset County conviction"): based on three charges, each yielding a five-year term running concurrently with each other; that judgment was accompanied by the state court's wishes that those terms would run concurrently with Petitioner's federal term imposed by this Court. The second group of convictions was rendered on September 23, 2011, by the Superior Court of New Jersey, Bergen County ("Bergen County conviction"): based on four charges that resulted in five-year terms running concurrently with each other and with the sentences imposed in Somerset County. As with the Somerset County sentences, the Bergen County sentences were also accompanied by the state court's wishes that they run concurrently with Petitioner's federal term imposed. Finally, the third group of Petitioner's New Jersey convictions was rendered on November 10, 2011, by the Superior Court of New Jersey, Warren County ("Warren County conviction"). It, too, was based on four charges, each yielding a five-year term running concurrently with each other and the sentences imposed in Somerset and Bergen Counties. As with the sentences in Somerset and Bergen Counties, the Warren County sentences were accompanied by the state court's wishes that they run concurrently with Petitioner's federal term imposed by this Court. Accord https://www6.state.nj.us/DOC_Inmate/details?x=1014394&n=0.

Beginning March 21, 2013 (three years after being sentenced by this Court), Petitioner started filing applications in this District challenging his federal guilty plea, the sentence imposed by this Court, the BOP's hypothetical future errors in calculating his federal term and the NJDOC's alleged errors in execution of his currently running New Jersey terms. As example, on March 21, 2013, he filed an application titled "Notice of

Motion for Correction of Sentence and Other Relief." McKnight, Crim. Action No. 09-0242, ECF No. 26. That application asked this Court to: (a) direct the BOP to grant him prior custody credit as to his yet-to-be-calculated federal term; and (b) amend his federal sentence so it would run concurrent with the New Jersey sentences imposed under his Bergen, Somerset and Warren County convictions. See id. Alternatively, he asked this Court to direct the BOP to grant him Barden designation: so the facility where he was serving his New Jersey terms would also be deemed the place where he served his federal term, since such designation would produce the same outcome as this Court's directive to have his federal sentence run concurrent with his state terms. Simply put, Petitioner asked this Court to take whatever measure possible to ensure that Petitioner would satisfy all his state and federal obligations by serving a single five-year term. See id. When that submission was served on the Government in his criminal case, the Government forwarded it to the BOP for Barden analysis. The BOP contacted this Court, and this Court, upon carefully reflecting on the record accrued, recommended against Barden designation. The agency then conducted its own analysis of the statutory factors and, in an exercise of its discretion, issued a determination denying Petitioner Barden designation. That determination was made on May 15, 2013.

In response, Petitioner commenced this Section 2255 action. He re-raised his administrative challenges against the BOP and NJDOC and, in addition, broadened his attack on his federal plea and sentence, now maintaining that his counsel provided him with assistance violating his Sixth Amendment rights because: (a) counsel, allegedly, told him that all his sentences, state and federal, would run concurrently if this Court sentenced him first; and (b) counsel did not seek a federal term prospectively concurrent with those

eventually imposed a result of Petitioner's Warren County convictions.  See this Action, ECF Nos. 1 and 3.  Being advised of his rights under United States v. Miller, 197 F.3d 644 (3d Cir. 1999), Petitioner responded with a request to have his filings (docketed here as ECF Nos. 1 and 3) read jointly with his statement attached to his response to the Miller notice in order to have these three documents construed as his all-inclusive § 2255 motion. See ECF Nos. 5, 6, 6-2 and 7.  These documents, as well as the filings he made later, verified Petitioner's intent to litigate four completely different lines of habeas claims: (1) § 2255 challenges to his federal plea and sentence; (2) § 2241 challenges to the BOP decision denying him Barden designation; (3) § 2241 challenges to the BOP's hypothetical future errors in calculating his federal term; and (4) § 2254 challenges to the NJDOC's alleged denial of prior-custody credits and enrollment into certain programs, as well as the NJDOC denial of an unspecified measure which Petitioner equated to federal good-conduct time ("GCT") credits.[1]  Each line of these § 2241 and § 2254 claims will be severed into its own habeas case under Habeas Rule 2(e).

---

[1] An attack on the NJDOC determinations is a § 2254 challenge that cannot be converted into a § 2241 or § 2255 claim by a reference to a federal detainer, as Petitioner tries to do here.  See, e.g., Bayard v. Hufford, No. 11-1421, 2011 U.S. Dist. LEXIS 153245, at *13 (M.D. Pa. Sept. 13, 2011); Ryan v. Dep't of Homeland Sec., No. 09-0399, 2010 U.S. Dist. LEXIS 34951, at *2-3 (N.D. Fla. Mar. 8, 2010).  Also, Petitioner's reference to "state GCT credits" is not entirely clear to this Court since state law has no such provision. Rather, it imposes minimum and maximum terms of incarceration and allows release on parole in the event an inmate's sentences makes him eligible, and the Parole Commission finds him suitable for release.  See http://www.state.nj.us/parole/docs/AdultParoleHandbook.pdf at 25 (since, in New Jersey, "[a] Certificate of Good Conduct is issued [only] to assist in the rehabilitation of convicted offenders by removing some of the restrictions upon their ability to obtain proposed employment," a GCT Certificate is irrelevant to an inmate's sentence calculation).

## I.       BOTH PETITIONER'S § 2241 ATTACKS ARE DEFICIENT

"The authority to calculate a federal prisoner's release date for the sentence imposed, and to provide credit for pre-sentence detention and good conduct, is delegated to the Attorney General, who acts through the [BOP]." Armstrong v. Grondolsky, 341 F. App'x 828, 830 (3d Cir. 2009) (citing United States v. Wilson, 503 U.S. 329, 334-35 (1992)). "In calculating the sentence, the BOP determines[:] (1) when the federal sentence commenced, and (2) whether there are any credits to which the prisoner may be entitled." Nieves v. Scism, 2013 U.S. App. LEXIS 10989, at *3 (3d Cir. 2013) (citing 18 U.S.C. § 3585). A sentence begins the date when a defendant "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a); see also Howard v. Longley, 2013 U.S. App. LEXIS 17905, at *4 (3d Cir. Aug. 27, 2013) ("a sentence cannot start earlier than the day it was imposed . . . 'even if made concurrent with a sentence already being served'") (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). A federal sentence cannot begin to run when a defendant is placed in federal custody under an ad prosequendum writ, see generally, Ruggiano v. Reish, 307 F.3d 121 (3d Cir. 2002), since primary jurisdiction remains vested in the state because it is the sovereign that arrested the defendant first. Primary jurisdiction remains with the state until it relinquishes its priority, which the state can do only by one of four ways: (a) bail release; (b) dismissal of all charges; (c) parole release; or (d) expiration of sentence. See Rios v. Wiley, 201 F.3d 257, 274 (3d Cir. 2000), superseded on other grounds, as stated in, United States v. Saintville, 218 F.3d 246, 248-49 (3d Cir. 2000); Davis v. Sniezek, 403 F. App'x 738, 740 (3d Cir. 2010) (same, relying on United States v. Cole, 416 F.3d 894, 897 (8th

Cir. 2005)); see also Chambers v. Holland, 920 F. Supp. 618, 622 (M.D. Pa.) ("Primary jurisdiction over a state prisoner ends and federal custody over him commences only when the state authorities relinquish him on satisfaction or extinguishment of [his] state obligation[s]"), aff'd, 100 F.3d 946 (3d Cir. 1996); accord Carmona v. Williamson, No. 05-0022, 2006 U.S. Dist. LEXIS 77201 (M.D. Pa. Oct. 23, 2006) (since the state holds primary jurisdiction over the defendant, the federal officials assume only secondary jurisdiction over him while he is serving his state sentence).

Once the state's primary jurisdiction is relinquished, federal jurisdiction transforms from secondary to primary. See Chambers, 920 F. Supp. at 622. At that point, the BOP calculates an inmate's projected release date by factoring in the specifics of his federal sentence and all appropriate credits. See Armstrong, 341 F. App'x at 830. The key point of this calculation is the well-settled principle that a federal prisoner cannot receive a so-called "double credit," that is, a credit for the time already credited against his state sentence. See Wilson, 503 U.S. at 337 (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time"). That said, a federal prisoner is entitled to a so-called "prior custody credit" for the time he spent in detention before his federal sentence began, that is, if that this period has not already been credited against his other sentence. See 18 U.S.C. § 3585(b) ("prior custody credit" is proper if the detention resulted either from the offense for which the sentence was imposed or from "any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed [provided that such period] has not been credited against any other sentence"); compare Rios, 201 F.3d at 273 n.14 (even under § 3568, that is, the § 3585 predecessor which – unlike § 3568 – did not expressly preclude double credit, credit

was still unavailable for the time credited against the defendant's state sentence, regardless of whether or not that detention came about because the defendant was denied bail in state forum on the basis of a federal detainer).

In addition, the BOP may take an administrative action creating a credit-like effect. See, e.g., Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1990).

The Barden analysis can be summarized this way:

> Under Section 3621(b), the BOP has discretion – i.e., the BOP *may but not must* – designate, [either prospectively] or nunc pro tunc, a state facility where a prisoner [is serving or] served his state sentence as a facility where the prisoner [is or] was serving his federal sentence.  .  .  .   The BOP may exercise such discretion only if the state court clearly indicated its intention to have the prisoner's state sentence run concurrently with the prisoner's already imposed federal sentence.  Once the BOP determines such clear intent on behalf of the state court, the BOP: (1) is obligated to exercise its discretion by considering the prisoner's application in light of the factors stated in § 3621(b); but (2) is *not* obligated to grant the prisoner's request if, upon considering the prisoner's application in light of the factors stated in § 3621(b), the BOP concludes, in good faith, that such nunc pro tunc designation is not warranted.

Galloway v. Warden of F.C.I., No. 08-5182, 2009 U.S. Dist. LEXIS 9293, at *10-11 (D.N.J. Feb. 9, 2009) (emphasis supplied), aff'd 385 F. App'x 59 (3d Cir. 2010) (where the BOP effectively frustrated the express wishes of the state judge who wrote, "It is difficult to comprehend [why the petitioner's] sentence, against [my] clear direction, should not run concurrent with [his f]ederal sentence," the BOP did not abuse its discretion in denying Barden designation, because the agency did not abdicate its responsibility to independently decide the issue.  A habeas review does not turn on what is "difficult to comprehend"; it is "limited to whether the BOP abused its discretion").

In addition, a prisoner's federal term can be reduced as a result of a downward departure granted by his *federal* court.  With regard to that decision, the BOP has no

authority but to execute it faithfully. Accord Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("3621(b) . . . does not confer [upon the BOP] authority to choose between concurrent and consecutive sentences"). If the federal court directs a prisoner's federal term to run in prospective concurrence with his undischarged (either already running or yet-to-be imposed) state sentence, or if the federal court orders retroactive concurrence to an already-running state term, the BOP can neither second-guess nor alter that judgment. See 18 U.S.C. § 3584(a) (federal courts' power to order prospective concurrence to an undischarged, already-running state term); accord Setser v. United States, 132 S. Ct. at 1463 (federal courts' power to order prospective concurrence to a yet-to-be-imposed state term); Ruggiano, 307 F.3d at 121 (federal courts' power to order retroactive concurrence to an undischarged, already-running state term).

If the sentencing federal court did not address the issue of concurrence expressly, the BOP is obligated to presume an implied consecutiveness, rather than concurrence, of the federal term. See 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively *unless the court orders* that the terms are to run concurrently") (emphasis supplied).

### A.     Petitioner's *Barden* Claim Is Meritless

One of Petitioner's § 2241 challenges focuses on the BOP's denial of Barden designation. While Petitioner paraphrased this claim in different ways, see generally, McKnight, Crim. Action No. 09-0242, ECF No. 26-2; this Action, ECF Nos. 1, 3, 7, 9, 11, 13, his key points are the same. On the one hand, he asserts that the BOP "frustrated" the intention of this Court and his state judges by denying him Barden designation. On the other hand, he maintains that the BOP violated his rights by not taking him into federal

custody either right upon his federal sentencing or, at the very least, upon his Bergen, Somerset and Warren County convictions. Respondent read this claim as implicating a standing-to-sue inquiry and suggest that Petitioner has no standing to litigate a custody dispute between the state and federal prison authorities. See this Action, ECF No. 8, at 16-17. Respondent misreads Petitioner's position, since he claims that the federal authorities illegally "created" a scenario allowing them to exercise their discretion and to deny him Barden designation by "electing" not to take him into federal custody right after his federal conviction or, at the very least, right upon his state convictions.

Petitioner's Barden claim is meritless. The BOP correctly presumed that this Court's silence as to any concurrence of Petitioner's federal sentence implied that the federal sentence was meant to run consecutively. See 18 U.S.C. § 3584(a). And, as this Court's response to the BOP's inquiry verified, the Court's silence as to concurrence was not an accidental oversight. Rather, it was a product of this Court's careful review of the record. To the extent Petitioner claims that the BOP "frustrated" this Court's intentions, his position lacks a factual predicate.

To the extent he asserts that the BOP "frustrated" the intentions of his state judges, this claim fails to show a violation of his federal rights. As the Court of Appeals explained in Galloway, 385 F. App'x 59, the Barden analysis examines only: (a) whether the BOP duly considered the statutory factors; and (b) whether it abused its discretion in conducting its analysis. The issue of "frustrating" a state judge's sentencing intentions, or the emotional "frustration" the state judge or the prisoner might experience, falls outside the scope of the § 2241 inquiry. See id. State judges have long been put on notice about this fact:

> State sentencing judges . . . should be put on notice.  Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of state sentencing judges that a prisoner be transported to a federal facility. . . .  [C]oncurrent sentences imposed by state judges are nothing more than recommendations to federal officials.  Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

Galarza-Villanueva v. Rios, No. 11-0228, 2012 U.S. Dist. LEXIS 47950, at *17 (E.D. Cal. Apr. 3, 2012) (quoting Del Guzzi v. United States, 980 F.2d 1269, 1272-73 (9th Cir. 1992) (Norris, J., concurring), cited with approval in Galloway, 385 F. App'x at 65).  It follows that Petitioner's claim asserting that the BOP "frustrated" the intentions of his state judges warrants no habeas relief.

His claim that the BOP illegally "created" a situation allowing the agency to exercise its Barden discretion is also meritless.  Petitioner fails to appreciate the effect of primary jurisdiction.  He was arrested by New Jersey on November 6, 2007, in connection with the charges underlying his Bergen County conviction.  When he was released on bail, New Jersey divested itself of primary jurisdiction.  On December 8, 2007, when he was re-arrested in connection with the charges underlying his Somerset County conviction, New Jersey re-assumed primary jurisdiction and retained it until he was released on bail on those charges.  Then, on April 29, 2008, he was arrested on the charge underlying his federal sentence.  Since he was arrested from the public at large, that arrest vested primary jurisdiction with the federal government.  But the federal government lost its primary jurisdiction on May 5, 2008, when Petitioner made bail on the federal charge.  When he was re-arrested by New Jersey on November 23, 2009, this time in connection with the charges underlying his Warren County conviction, primary jurisdiction vested anew with New Jersey.  Since, from that point on, he was neither released on bail nor had all his New

Jersey charges dismissed (or parole granted as to all those charges), and his New Jersey sentences are still running, New Jersey still has primary jurisdiction over him.  In other words, short of the April 29 to May 5, 2008, period, the federal authorities always had only secondary jurisdiction over Petitioner, and that jurisdictional balance was not affected by the writ of habeas corpus ad prosequendum issued by this Court.  It follows that, when this Court sentenced Petitioner on April 14, 2010, or when Petitioner's Somerset, Bergen and Warren County state sentences were rendered (on April 8, September 23 and November 10, 2011, respectively), Petitioner was in New Jersey's primary jurisdiction.  The BOP had no mandate to take him into federal custody upon his federal sentencing or upon his Somerset, Bergen and Warren County convictions.  The BOP acted in the only way it could when it declined to take Petitioner into federal custody.

Had the state courts wished to ensure Petitioner's placement in federal custody upon his federal sentencing, they could have achieved that by releasing him on bail on the charges underlying his Warren County conviction or by dismissing all his state charges before this Court's sentencing.  The state courts did not do so.  Instead, they entered their judgments in a fashion triggering the scenario under which Petitioner's federal term would run consecutively to his state sentences.  Petitioner cannot convert his displeasure with the state judges' elections into a viable claim against the BOP.

Since the record shows that the BOP duly conducted its independent analysis of the statutory factors, and the Court, upon a careful review of the agency's decision, finds no reason to conclude that it abused its discretion in denying Petitioner Barden designation, Petitioner's Barden claim will be dismissed.  See Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, 467 U.S. 837, 842-43 (1984).

**B.** **Petitioner's Sentence-Calculation Claim Is Meritless**

Petitioner also asserts that he had spent certain periods in New Jersey confinement during, or in connection with, the pendency of his federal criminal proceeding, and those periods: (a) neither were credited nor would be credited against his currently running New Jersey terms; and (b) might also be left not credited against his federal term at the time when the BOP calculates his release date. See, e.g., McKnight, Crim. Action No. 09-0242, ECF No. 26-2, at 11. He seeks this Court's order preemptively directing the BOP to grant him these credits against his yet-to-be-calculated federal term.

That this Court cannot do. To the extent Petitioner asks this Court to calculate his term of federal imprisonment, the Court has no jurisdiction. See Armstrong, 341 F. App'x at 830. To the extent he challenges a hypothetical future error the BOP might make in calculating his federal term, the claim is unripe. See Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 636 (D.N.J. 2008) (challenges based on hypothetical future developments are speculative since "the language of § 2241 is set forth in present rather than in future terms, i.e., it reads: 'The writ of habeas corpus shall not extend to a prisoner unless . . . he is [rather than will be] in custody in violation of the Constitution or the laws or treaties of the United States'"); see also Peachlum v. City of York, Pennsylvania, 333 F.3d 429, 433 (3d Cir. 2003) ("The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and [the] dispute is sufficiently concrete.") (citations omitted); Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 575 (3d Cir. 2003) ("The ripeness doctrine prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."). This claim cannot be litigated until the BOP makes a calculation and Petitioner, after properly exhausting his

challenges at all three levels of the BOP, raises it in a § 2241 petition.  But, taking notice of Petitioner's prolific litigation in all fora, this Court cannot rule out the possibility that Petitioner may have already obtained an administrative determination that is sufficiently concrete.  Hence, the Court will dismiss this § 2241 claim with leave to show proper administrative exhaustion.

## II.  PETITIONER'S § 2254 ATTACK IS DEFICIENT

As the Court has already explained, a habeas corpus petition filed under 28 U.S.C. § 2254 is the only proper mechanism for a state prisoner to challenge the "fact or duration" of his state confinement.  See Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  It means that claims challenging state sentence calculation or denial of state credits are to be raised under § 2254.  See Coady, 251 F.3d 480; accord Brian R. Means, Federal Habeas Manual § 1:34 (May 2013) ("The vast majority of courts have concluded that, although the texts of § 2241 and § 2254 appear similar in their grant of jurisdiction, § 2254 is the *exclusive* avenue for a state prisoner challenging the constitutionality of his detention.  Section 2254 is properly understood as in effect implementing the general grant of habeas corpus authority found in § 2241, even if the petitioner is not challenging the underlying state court conviction (such as challenges to parole determinations), so long as the person is *in custody pursuant to the judgment of a state court*.") (original emphasis removed, alternative emphasis supplied); see also Felker v. Turpin, 518 U.S. 651, 662 (1996) ("Our authority to grant habeas relief to state prisoners is limited by § 2254.").  It has long been established that a state prisoner is required to exhaust all available state remedies before filing his federal habeas petition, see 28 U.S.C. § 2254(b)(1), and he bears the burden of demonstrating proper exhaustion.  See Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000).

Petitioner's scattered claims (asserting the NJDOC's denial of prior custody credits, enrollment into certain programs having term-reducing or quantum-changing effects, and denial of credits that Petitioner equated to federal GCT credits) appear unexhausted. They will be dismissed without prejudice to being raised upon Petitioner's completion of his state exhaustion process. Since this Court cannot rule out the possibility that Petitioner might have simply omitted to detail his exhaustion of these claims in state fora, the Court will dismiss these claims with leave to raise all Petitioner's duly exhausted claims, if they resulted from a *single* NJDOC determination, in his amended pleading filed in the new § 2254 case the Clerk may commence for Petitioner. See 28 U.S.C. § 2254 Rule 2(e).

Also, the Court notes that Petitioner must marshal all his challenges in his amended petition, and no claim raised in his post-amended-pleading submission will be considered by this Court unless he first obtains leave from the Court of Appeals to file a second/successive § 2254 petition. See Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000) (obligating the courts to notify pro se litigants of the consequences of filing a § 2254 petition). Meanwhile, the Court will deny Petitioner a certificate of appealability ("COA"), because it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 123 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v.

McDaniel, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find it debatable that Petitioner's § 2254 challenges, as stated, appear unexhausted.

## III.    PETITIONER'S § 2255 ATTACK IS MERITLESS

To correct a defendant's sentence under Section 2255, the court must find "that . . . judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack."  Garcia v. United States, No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted).   The defendant bears the burden of establishing his entitlement to § 2255 relief, see United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005), and, since the defendant's § 2255 petition is a *collateral* attack, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief.  See United States v. Bohn, No. 92-6102, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).

Also, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposed a one-year period of limitation on the filings of § 2255 motions.  See 28 U.S.C. § 2255; Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 619 n.1 (3d Cir. 1998); accord 28 U.S.C. § 2255(f).

Additionally, the defendant convicted as a result of his guilty plea cannot attack that plea in a § 2255 motion unless his conviction was first challenged on direct appeal. See United States v. Garth, 188 F.3d 99, 106 (3d Cir. 1999) ("[V]oluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on

direct review.") (citations omitted); accord North Carolina v. Alford, 400 U.S. 25, 31 (1970); United States v. Broce, 488 U.S. 563, 574 (1989) (a conviction resulting from a knowing and voluntary plea of guilty by the defendant advised by competent counsel is, generally, not subject to a collateral attack: if not challenged on direct appeal, it is deemed procedurally defaulted). A procedurally defaulted § 2255 motion could be reviewed on the merits only if the defendant shows either: (a) cause and actual prejudice; or (b) actual innocence. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); see also Garth, 188 F.3d at 106; United States v. Sanders, 165 F.3d 248, 250 (3d Cir. 1999).

In sum, the defendant who pleads guilty waives all pre-plea and plea-unrelated claims. It means his § 2255 motion must be limited to an attack on his plea and/or the assistance of his counsel provided in connection with that plea. See Broce, 488 U.S. at 569; Mabry v. Johnson, 467 U.S. 504, 508-09 (1984); Tollett v. Henderson, 411 U.S. 258, 267 (1973) (when a defendant has unconditionally pled guilty, "he may . . . only attack the voluntary and intelligent character of the guilty plea"); see also Hill v. Lockhart, 474 U.S. 52, 58 (1985). Also, where a defendant executes a waiver, that waiver is binding unless the defendant states an ineffective-assistance-of-counsel claim that relates specifically to counsel's performance in connection with that waiver. Accord United States v. Hahn, 359 F.3d 1315, 1326 n.12 (10th Cir. 2004); see also United States v. Corso, 549 F.3d 921, 931 (3d Cir. 2008).

Even where: (a) a § 2255 motion is timely; (b) there is no procedural default; and (c) the defendant who plead guilty raises only plea-related claims, his challenges to the assistance rendered by his counsel merits habeas relief only if he satisfies the two-prong test of Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Under the first prong, he

must show that his counsel's performance fell below an objective standard of reasonableness, see id. at 688; under the second prong, he must establish prejudice caused by his counsel's deficient performance.  See id. at 692-93; see also Knowles v. Mirzayance, 556 U.S. 111 (2009).  The latter means, generally, that the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  But where the defendant attacks his plea on the basis of his counsel's assistance, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  . . .  [Hence,] the defendant must show that there is a reasonable probability that, but for counsel's errors, he would *not* have pleaded guilty and would have *insisted* on going to trial."  Hill, 474 U.S. at 58-59 (1985) (emphasis supplied); United States v. Orocio, 645 F.3d 630, 638 (3d Cir. 2011); see also United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008) (The court may "consider the prejudice prong before examining the performance of counsel prong") (citation omitted).

Important here, when the defendant does not deny his involvement in the crime he plead guilty to, his "failure to disavow those charges supports a finding that he would have been convicted had the case gone to trial" and his plea did not cause him prejudice.  Cedeno v. United States, 455 F. App'x 241, 245 (3d Cir. 2011) (citing Premo v. Moore, 131 S. Ct. 733, 745 (2011), for the observation that a defendant's failure to deny involvement in the underlying crime "counsels against a finding of prejudice").

Petitioner's judgment of conviction, entered on April 12, 2010, became final on April 26, 2010, since he did not file a direct appeal.  See 28 U.S.C. § 2255(f)(1); Fed. R. App. P. 4(b)(1)  ("In a criminal case, a defendant's notice of appeal must be filed in the

district court within 14 days . . . of the entry of either the judgment or the order being appealed"); Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999) (where a defendant does not pursue a timely appeal, his conviction becomes final, and the statute of limitations begins to run on the date when the time to appeal expired).  His AEDPA period of limitations was triggered the next day and expired one year later, on April 26, 2011.  Cf. Douglas v. Horn, 359 F.3d 257, 261 n.5 (3d Cir. 2004) (explaining how to determine the first day of the AEDPA period).  Petitioner concedes that his one-year post-final-judgment period expired on that date, that is, April 26, 2011, but still maintains that his § 2255 challenges should be deemed timely since: (a) he, allegedly, mailed a certain letter on March 5, 2012, "seeking a correction of his sentence"; and (b) that alleged mailing was made within one year of his Warren County conviction.  See this Action, ECF No. 9, at 2.[2] Trying to stitch this allegedly mailed letter to his timeliness position, Petitioner now characterizes his Warren County conviction as "newly discovered evidence" that should have re-triggered his AEDPA one-year period anew.  See id.  In the alternative, he seeks equitable tolling.

"[Petitioner's] allegations mix apples and oranges, and many other fruits as well." In re Ins. Brokerage Antitrust Litig., No. 05-1079, 2007 U.S. Dist. LEXIS 25632, at *121 (D.N.J. Apr. 5, 2007), aff'd in part, remanded in part on other grounds, 579 F.3d 241 (3d Cir. 2009).  This is so because Petitioner's timeliness argument turns on the legal significance of the flaws in his *state* sentences.  The unenforceability of his state judges'

---

[2]  There is no dispute that this District never received such a letter from Petitioner.  See this Action, ECF No. 9, at 2; see generally, McKnight, Crim. Action No. 09-0242, Docket (reflecting lack of filings during 2012)). The Court also notes a discrepancy between Petitioner's November 1, 2011, date of his Warren County conviction and the November 10, 2011, date of the same conviction reflected on the NJDOC website.  But this nine-day discrepancy is of no import for the purposes of this Court's analysis here.

wishes in federal fora are irrelevant to his § 2255 attack on his *federal* plea and the resulting *federal* sentence since no aspect of his state prosecutions was a part of his federal proceeding.  These flaws in state sentences cannot re-trigger his AEDPA period.  <u>Accord</u> <u>United States v. Nuckols</u>, No. 04-0139, 2009 U.S. Dist. LEXIS 113085, at *7-8 (D. Vt. Oct. 28, 2009) (citing <u>Shabazz v. Filion</u>, No. 02-0939, 2006 U.S. Dist. LEXIS 73356, at *6 (N.D.N.Y. Sept. 26, 2006), for the observation that "[t]he date of recognition of the legal significance of facts is irrelevant").  Because Petitioner's AEDPA period expired on April 26, 2011, that is, many years before he made any post-judgment filing in this District, his § 2255 challenges are untimely unless he shows a basis for equitable tolling.  Here, equitable tolling is not warranted.

Being fully apprised of the terms of his federal plea and this Court's sentence, Petitioner was returned to state jurisdiction upon expiration of his federal writ of habeas corpus <u>ad</u> <u>prosequendum</u>.  Starting from at least April 7, 2010, the date of his federal sentence, he knew that the BOP was not taking him into federal custody.  He knew it every day since.  He knew it while waiting – two years – for his Somerset County conviction. He was reminded of the same when he was not taken into federal custody upon that conviction.  He continued knowing it while waiting for his next conviction in Bergen County.  He was re-reminded of the same when he was not taken into federal custody upon that conviction.  He continued knowing it each day while waiting for his next conviction in Warren County.  Not taken into federal custody upon that conviction either, he was re-reminded of the same and knew it every day thereafter.

Now, he comes before this Court asserting entitlement to equitable tolling because he, allegedly, came to fully appreciate the legal significance of the flaws in his state

bargains only when the NJDOC formally notified him that the BOP would not take him into federal custody until all his state terms expire.  See this Action, ECF No. 9, at 3. Petitioner's laxness cannot be rewarded in equity.  "Finding otherwise would make a mockery of those litigants who did and do go through the very same [legal] process and yet meet their deadlines or act with utmost diligence and promptness [even] when faced with [truly] extraordinary circumstances . . . to ensure the availability of substantive federal habeas review."  Webster v. Ricci, No. 10-5640, 2013 U.S. Dist. LEXIS 88945, at *46 (D.N.J. June 25, 2013) (citing Holland v. Florida, 560 U.S. 631 (2010); Pace v. DiGuglielmo, 544 U.S. 408 (2005)), certif. denied sub nom., Webster v. Adm'r N.J. State Prison, 2013 U.S. App. LEXIS 25719 (3d Cir. Oct. 25, 2013).

     In addition, the Court also notes that Petitioner's § 2255 claims are deficient in many other respects, procedural and substantive.  As example, he has procedurally defaulted these claims by not raising them on direct appeal, and that procedural default is undissolved since: (a) he still concedes being guilty of the federal offense to which he pled guilty; and (b) while attempting to claim "prejudice," he asserted no "cause" to justify his default.  Even if this Court were to factor out the procedural default aspect, Petitioner's § 2255 claims would be barred by his waiver.  He now claims he would not have executed the waiver had he been aware of the possibility that the wishes of his state judges might prove unenforceable in federal fora.  But his disappointment with the later-discovered flaws in his state bargains does not make his federal waiver involuntary or unintelligent.  See, e.g., United States v. Paige, 340 F. App'x 804 (3d Cir. 2009), cert. denied, 558 U.S. 1130 (2010).

The Paige defendant challenged the district court order that his federal sentence be served consecutively to, rather than concurrently with, his state sentence.  Yet, the defendant voluntarily entered a broadly-termed federal waiver.  Although he claimed he did not intend to waive his right to appeal the issue of whether his sentence would run consecutively or concurrently, his claim was dismissed under the language of his waiver that expressly referred to his sentence.  See id. at 805 (quoting United States v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001)).  Here, as in Paige, Petitioner's waiver used language that expressly covered his sentence.  It follows that his § 2255 claims are barred by waiver.

Furthermore, Petitioner's § 2255 claims are substantively meritless.  He maintains that his federal sentence should have been imposed to run in then-prospective-concurrence with his then-yet-to-be-imposed Warren County sentence because the crimes underlying his federal and Warren County convictions employed similar modi operandi.  To that end, he relies on a decision from the Eleventh Circuit, United States v. Fuentes, 107 F.3d 1515 (11th Cir. 1997).  See this Action, ECF No 1-1, at 10-11.  Petitioner errs in his reading of the phrase modus operandi, as it is used for the purposes of the sentencing analysis, and in his reliance on Fuentes.[3]  The defendant in Fuentes was *initially convicted in a state forum* on the basis of some aspects of his criminal transaction and *later tried in the federal court* on the basis of other aspects of the very same transaction.  The Fuentes court concluded that the federal prosecutor deliberately portrayed the state aspects of the defendant's offense as conduct wholly unrelated to the federal aspects in order to manipulate the federal court into imposing a consecutive sentence.  Under those very unique circumstances, the Fuentes court reflected on the U.S.S.G. § 1B1.3, comment, n.9(A) (entered on November

---

[3]  The value of Fuentes, a decision not binding in this Circuit, was further diminished by promulgation of Guideline Amendment 660, effective November 1, 2003, that affected U.S.S.G. § 5G1.3.

1, 1995), and directed concurrence of federal and state sentences noting, in passing, that all aspects of the defendant's transaction constituted a "common scheme [being] substantially connected to each other by at least . . . similar <u>modus</u> <u>operandi</u>." <u>Fuentes</u>, 107 F.3d at 1525.

The holding of <u>Fuentes</u> was then narrowed by later case law which found <u>Fuentes</u> inapposite: (a) where, as here, the defendant was sentenced on his state charges *after* his federal sentencing, <u>see</u> <u>Brown v. Zych</u>, No. 11-0605, 2012 U.S. Dist. LEXIS 156396, at *23-24 (W.D. Va. Oct. 31, 2012); and (b) where, as here, no prosecutorial manipulation was present, <u>see</u> <u>United States v. Patterson</u>, 346 F. App'x 548, 551 (11th Cir. 2009). Moreover, even the Eleventh Circuit concluded that, where federal and state offenses occur at different times and constitute different transactions, <u>Fuentes</u> does not apply.  <u>See</u>, <u>e.g.</u>, <u>United States v. Richardson</u>, 2013 U.S. App. LEXIS 18688, at *7-8 (11th Cir. Sept. 9, 2013).  This is so because Section 1B1.3 was "designed to take account of a pattern of misconduct that cannot readily be broken into discrete identifiable units . . . for purposes of sentencing.  [Conversely,] when illegal conduct does exist in 'discrete, identifiable units' . . . , the Guidelines anticipate a separate [sentence] for [each] such [unit]." <u>United States v. Maxwell</u>, 34 F.3d 1006, 1010-11 (11th Cir. 1994) (citations omitted).  This underscores Petitioner's misreading of <u>Fuentes</u>.  A defendant's election to employ similar <u>modi</u> <u>operandi</u>, as this term of art is used to determine whether the prosecutor met his burden of establishing the defendant's <u>mens</u> <u>rea</u>, qualitatively differs from how this term is used for the purposes of the transactional inquiry laying at the heart of the sentencing regime.  Had it been otherwise, a killer committing a murder a year, for decades, would still be entitled to a single string of automatically-concurrent sentences had he succeeded at showing that all his murders employed similar <u>modi</u> <u>operandi</u>.

The transaction underlying Petitioner's federal conviction took place long before the transaction underlying his Warren County conviction: these two transactions were separated by more than a year and a half, and the gap period included, inter alia, Petitioner's federal arrest.  Accord United States v. Blanc, 146 F.3d 847, 852 (11th Cir. 1998) ("[i]n determining whether two or more offenses meet these tests, the sentencing court should consider . . . the time interval between the offenses").  Each of these two transactions was a discrete and identifiable unit.  His federal sentence was properly selected to run without any relation to his state terms.

Finally, Petitioner's attack on his counsel's performance is also meritless.  To succeed on that challenge, Petitioner must establish prejudice under Hill, 474 U.S. at 58-59, by "show[ing] that [(a)] but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," and (b) the outcome of that trial "would have been different."  Strickland, 466 U.S. at 694.  Petitioner did not assert that he would have insisted on proceeding to trial; in fact, he did not even entertain the possibility of going to trial.  He still admits committing the federal offense.  This Court presumes that Petitioner would have been convicted had he been tried.  See Cedeno, 455 F. App'x at 245.  And this Court would have sentenced him to the same or an even longer federal term.  Because his federal offense was a discrete and identifiable transactional unit, that federal term might well have been imposed consecutively.  It follows that he has failed to establish prejudice and his attack on his counsel's performance is meritless.  See Lilly, 536 F.3d at 196.

The Court must now determine whether a COA should issue with regard to Petitioner's § 2255 challenges.  As explained, this Court may issue a COA only if Petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  When a habeas petition is denied on procedural grounds, such as untimeliness or procedural default, the litigant must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  See Slack, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. Petitioner's challenges are untimely and barred both procedurally and by his waiver.  The Court is persuaded that reasonable jurists would not debate the correctness of this conclusion.  In addition, because the Court considered the merits of Petitioner's claims, the Court also declines to issue a COA because of Petitioner's failure to demonstrate that jurists of reason could disagree with this Court's substantive findings.  See Miller-El, 537 U.S. at 327.

## IV.    CONCLUSION

Petitioner's § 2255 motion will be denied.  No certificate of appealability will issue as to his § 2255 claims.   Petitioner's two lines of § 2241 challenges will be severed into two new § 2241 habeas cases; one will be dismissed with prejudice, the other will be dismissed with leave to show proper administrative exhaustion.  Petitioner's § 2254 challenges will also be severed into a new habeas action and dismissed.  Although no certificate of appealability will issue as to these § 2254 challenges, Petitioner will be allowed an opportunity to show proper exhaustion of these claims in state fora.

An appropriate Order follows.

**/s/William H. Walls**
United States Senior District Judge

Dated: June 25, 2014